**IN THE UNITED STATES DISTRICT COURT FOR THE
EASTERN DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | : | |
| | : | CRIMINAL ACTION |
| v. | : | 06-658-03 |
| | : | |
| CONSTANCE TAYLOR | : | |
| | : | |

**July 20, 2021**                                                          **Anita B. Brody, J.**

<u>**MEMORANDUM**</u>

The court has the sole statutory authority to determine the amount of restitution, the schedule of payments, and whether to modify that schedule of payments based on changed economic circumstances of the defendant.  The government only has the authority to enforce the terms of the court's restitution order.

After consideration of Taylor's economic circumstances—a statutory requirement—this Court ordered Taylor to pay $100 per year towards her restitution judgment of $3,300,000.  Despite Taylor's compliance with the Court's restitution order, the government began deducting fifteen percent of Taylor's Social Security benefits to apply to her restitution judgment.  Taylor objects to the offset of her benefits and moves for relief from the government's actions to collect restitution. [1]  Because the government exceeded its authority and violated the Court's restitution order when it offset Taylor's benefits, I will grant Taylor's motion for relief. [2]

---

[1] Taylor initially filed a pro se letter motion.  *See* ECF No. 1076.  On March 22, 2021, the Court appointed Peter D. Hardy, Esq. to represent Taylor in this matter and to provide supplemental briefing. *See* ECF No. 1084.

[2] Taylor also moves for the Government to provide her with an accounting of her joint and several restitution obligation.  The Government agrees to provide Taylor with an accounting of restitution currently owed, but it requests at least 120 days to allow the IRS to verify all payments that it has received that are related to Taylor's joint and several restitution obligation.  Gov't Resp. 5.  Because the Government has now been on notice of Taylor's request for several months, the Court will order the Government to provide Taylor with an accounting of restitution currently owed within approximately 90 days from the date of the order granting her motion.

**I. BACKGROUND**

On April 24, 2007, a grand jury charged several individuals, including Taylor, with conspiracy to defraud the Internal Revenue Service ("IRS"), as well as corruptly endeavoring to obstruct the administration of the tax laws.  These charges stemmed from each individual's involvement in an organization known as the Commonwealth Trust Company ("CTC"), a company that sold domestic and foreign trusts.  CTC advised clients that they could escape paying federal income tax by diverting their income through CTC trusts, and instructed clients to transfer assets they already had into these trusts to protect the assets from IRS liens and seizures.

On January 28, 2008, a jury found Taylor guilty of one count of conspiracy to defraud the United States, in violation of 18 U.S.C. § 371, and two counts of corruptly endeavoring to obstruct and impede the due administration of the Internal Revenue laws, in violation of 18 U.S.C. § 7212(a).  The Court sentenced Taylor to 90 months of imprisonment, three years of supervised release, a $300 special assessment, and restitution in the amount of $3,300,000 to the Internal Revenue Service.  The Court ruled that Taylor's restitution obligation was joint and several with her co-defendants.

Taylor appealed her conviction and sentence.  On November 15, 2011, the Third Circuit affirmed Taylor's conviction and sentence, but vacated the award of restitution entered against her with the following explanation:

> Under the Mandatory Victims Restitution Act, (MVRA), "[a] person sentenced to pay a fine or other monetary penalty, including restitution, shall make such payment immediately unless ... the court provides for payment on a date certain or in installments." 18 U.S.C. § 3572(d)(1). This statute also mandates that the sentencing order include a payment schedule in consideration of the defendant's economic circumstances. *See* 18 U.S.C. § 3664(f)(2), *see also*, *United States v. Coates*, 178 F.3d 681, 684 (3d Cir.1999). Failure to do so constitutes plain error. *United States v. Corley*, 500 F.3d 210, 227 (3d Cir.2007).

> Here, as the Government concedes and Appellant[] . . . Taylor point[s] out, the District Court ordered restitution in the amount of . . . $3,300,000.00 from Appellant Taylor, but the record reveals the District Court's failure to take into account [her] financial resources and a failure to state on the record the manner and schedule of payments. The District Court's sentencing orders are also silent on these matters, but for the amount of restitution ordered and that restitution is to be made immediately.
>
> It was plain error, therefore, for the District Court to order restitution without taking into account . . . Taylor's financial resources and without stating, on the record, the manner, method and schedule of payments. We will, therefore, vacate the District Court's order[] of restitution . . . and remand . . . to the District Court so that it may specify the amount of restitution and the method, manner and schedule of payments, after taking into account the financial resources of . . . Appellant.

*United States v. Crim*, 451 F. App'x 196, 210 (3d Cir. 2011).[3]

On November 5, 2012, in response to the Third Circuit's remand, the Court held a hearing to determine the manner and method of payments for Taylor's restitution based on her ability to pay.  At the hearing, the government advocated for the Court to reinstate restitution in the amount of $3,300,000.00 and argued that the Court should only require Taylor to pay $100 per year towards her restitution based on her ability to pay.  In doing so, the government pointed out that if it wished to increase Taylor's payment amount post-incarceration it could always "take it back up with your honor."  Hr'g 11/15/12. Because the government hadn't provided any evidence to support a payment plan of more than $100 per year, the Court held that "payment of restitution is $100 per year until further order of the Court."  Hr'g 11/15/12.  The Court also noted that if the government "wishes to have that amount increased [it] will have to file an appropriate petition and [it] will also have to file appropriate evidence . . . that an adjustment would be required." Hr'g 11/15/12.

---

[3] The opinion is captioned *United States v. Crim* because it also addressed the appeal of Taylor's co-defendant, John Michael Crim.

The Court memorialized Taylor's corrected restitution sentence in an amended criminal judgment. In the amended judgment, the Court again ordered Taylor to pay joint and several restitution in the amount of $3,300,000 and indicated: "Payment to begin immediately," and "The defendant shall make payments of $100.00 a year towards her restitution." Am. J. 5, ECF No. 912. Taylor appealed the amended restitution order. On January 16, 2014, the Third Circuit affirmed the Court's restitution order. *See United States v. Taylor*, 550 F. App'x 135 (3d Cir. 2014).

In October 2017, the government requested and received financial documents from Taylor in order to verify Taylor's financial resources and ability to pay restitution. Def.'s Letter Mot. Ex. A; Gov't Resp. 3. Based on its reviews of the information, the government determined that Taylor was able to pay $25 per month towards her restitution. Def.'s Letter Mot. Ex. B; Gov't Resp. 3. Accordingly, in February 2018, the government presented Taylor with a written payment agreement for her to sign that would modify her restitution payment from $100 per year to $25 per month. Def.'s Letter Mot. Ex. B; Gov't Resp. 3. Taylor did not oppose the modification, but she requested that the government draft an order that included the new monthly payment amount for the Court to approve. Def.'s Letter Mot. Ex. C; Gov't Resp. 3. The government never submitted the proposed modification of Taylor's restitution payment schedule to the Court for approval and Taylor's restitution payment amount remained $100 per year.[4] Gov't Resp. 3.

In November 2019, Taylor became eligible to receive Social Security benefits. Prior to becoming eligible for social security, the United States Department of Justice ("DOJ") had

---

[4] Until the filing of Taylor's pending motion, the Court was unaware of everything that transpired between the Government and Taylor in 2017 and 2018. Thus, the Court did not know that both parties were in agreement that Taylor was financially able to pay more towards her restitution, because the Government never moved to modify Taylor's restitution payment plan.

4

referred Taylor's restitution judgment to the United States Department of Treasury ("Treasury Department") for the purpose of collecting her debt through the Treasury Offset Program ("TOP").[5]

TOP is a federal program authorized by the Debt Collection Act of 1982, as amended by the Debt Collection Improvement Act of 1996, which permits the Treasury Department to collect delinquent debts owed to federal agencies. *See* 31 U.S.C. § 3716. Under TOP "Congress has subjected to offset all 'funds payable by the United States,' § 3701(a)(1), to an individual who owes certain delinquent federal debts." *Astrue v. Ratliff*, 560 U.S. 586, 589 (2010). The contours of TOP program have been described in the following terms:

> The practice of withholding federal payment in satisfaction of a debt is known as an administrative offset." *Reeves v. Astrue*, 526 F.3d 732, 738 n. 3 (11th Cir. 2008). The Debt Collection Improvement Act of 1982, 31 U.S.C. §§ 3701 *et seq.*, authorizes the Treasury Department "to collect non-tax debts by withholding funds paid out by other federal agencies." *Reeves*, 526 F.3d at 738 n. 3; see 31 U.S.C. § 3716(a); 31 C.F.R. § 285.5. Pursuant to the TOP, any federal agency with a claim against the debtor, after notifying the debtor that the debt is subject to administrative offset and providing an opportunity to dispute the debt or make arrangements to pay it, may collect the debt by administrative offset. *See* 31 U.S.C. § 3716(a), (c)(6). In order to do so, the creditor agency must certify to Treasury that the debt is eligible for collection by offset and that all due process protections have been met. *See* 31 C.F.R. § 285.5(d)(3)(ii), (d)(6). If properly certified, the Treasury Department must administratively offset the debt. *See* 31 U.S.C. § 3716(c)(1)(A).

*Cleveland v. United States*, No. 3:13-CV-281, 2020 WL 3976940, at *2 (M.D. Pa. July 14, 2020) (quoting *Johnson v. U.S. Dep't of Treasury*, 300 F. App'x 860, 862 (11th Cir. 2008) (footnotes omitted)). Under TOP, Social Security benefits are eligible for offset pursuant to the Debt

---

[5] On October 30, 2015, the DOJ sent Taylor an Administrative Offset Notice, informing Taylor that the DOJ intended to refer her restitution judgment to the Treasury Department for the purpose of collecting her debt through TOP. Gov't Surreply Ex. A, ECF No. 1082-1. The notice explained to Taylor that under TOP, "the Department of Treasury will reduce or withhold any of your eligible Federal payments . . . by the amount of your debt. This 'offset' process is authorized by the Debt Collection Act of 1982, as amended by the Debt Collection Improvement Act of 1996, and the Internal Revenue Code." *Id.* On March 19, 2016, Taylor's restitution judgment was formally added to TOP.

Collection Improvement Act.[6]  *Lockhart v. United States*, 546 U.S. 142, 145 (2005); *see also* 31

U.S.C. § 3716(c)(3)(A)(i).

Because Taylor's restitution judgment was enrolled in TOP, the Treasury Department

automatically deducted fifteen percent (approximately $235 per month) of Taylor's monthly

Social Security benefits and applied it to her restitution.  Taylor continues to comply with the

Court's $100 per year restitution payment plan.  Thus, on top of the $100 per year that Taylor

pays toward restitution, fifteen percent of Taylor's Social Security benefits are automatically

applied to her restitution judgment.[7]

## II. DISCUSSION

Because Taylor has complied with this Court's order and timely made $100 restitution

payments each year, Taylor contends the TOP offset is improper.  Taylor objects to the Treasury

Department's fifteen percent offset of her monthly Social Security benefits because it exceeds

the $100 per year restitution amount that the Court ordered her to pay pursuant to the Mandatory

Victims Restitution Act ("MVRA").[8]  In addition, she argues that TOP cannot apply to her

---

[6] An offset to a person's Social Security benefits, however, cannot exceed 15% of the monthly covered benefit payment.  31 C.F.R. § 285.4(e).

[7] The Government notes that "Taylor's restitution judgment currently is not enrolled in TOP to offset her payments.  The government will not enroll the debt in TOP pending resolution of this matter."  Gov't Resp. Def.'s Sur-Reply Br. 6 n.1.

[8]     In addition, Taylor argues that the offset of her Social Security benefits violates the *Ex Post Facto* Clause of the United States Constitution. Taylor bases her argument on the mistaken belief that the IRS sought to offset her benefits pursuant to the Firearms Excise Tax Improvement Act of 2010—a statute that did not become effective until August 16, 2010, almost two years after Taylor was sentenced. However, the IRS did not seek to assess and collect Taylor's restitution.  Rather, the DOJ sought the offset of Taylor's Social Security benefits pursuant to the Debt Collection Act of 1982, as amended by the Debt Collection Improvement Act of 1996, which enables the Treasury Department to collect delinquent debts owed to federal agencies.  *See* 31 U.S.C. § 3716(c).  Thus, Taylor's offset does not violate the *Ex Post Facto* Clause of the United States Constitution.
    Taylor also objects to the Treasury Department's offset of her Social Security benefits on the basis that the offset is a financial hardship.  Because the offset violates the Court's restitution order it is unnecessary to reach this argument.

because it only applies to delinquent debts and her debt is not delinquent because she has been

making timely restitution payments.  Notwithstanding that Taylor has made timely restitution

payments in accordance with the Court's restitution payment plan, the government argues that

Taylor's restitution debt is subject to TOP offset because she has not paid the entire

$3,300,000.00 owed for restitution.[9]  In the government's view, the Court's establishment of a

payment plan for restitution pursuant to the MVRA does not preclude the government from

undertaking a collection action against Taylor.

The MVRA applies to Taylor's conviction and provides that "the court shall order

restitution to each victim in the full amount of each victim's losses as determined by the court

---

[9]     The government also argues that Taylor cannot challenge the offset under TOP because she has failed to exhaust her administrative remedies, and even if a judicial remedy is permissible, it would require Taylor to bring a separate civil suit rather than filing a motion before the sentencing court.  In *United States v. Hughes*, 813 F.3d 1007 (D.C. Cir. 2016), the Court of Appeals for the District of Columbia appropriately rejected the same arguments by the government under very similar circumstances.  As in *Hughes*, Taylor did not fail to exhaust administrative remedies because there were no administrative remedies available to Taylor after the government began applying the offset to her benefits, and "even assuming an available administrative remedy, § 10(c) of the Administrative Procedure Act, 5 U.S.C. § 704, imposes no prerequisite of administrative exhaustion unless it is 'expressly required by statute or agency rule.' The government points to no statute or rule expressly imposing any such requirement." *Hughes*, 813 F.3d at 1010 (D.C. Cir. 2016) (quoting *Darby v. Cisneros*, 509 U.S. 137, 143 (1993)).

Additionally, Taylor's motion was properly brought before this Court because it sentenced Taylor.  As explained by the *Hughes* court:

> At least under these circumstances, where agency action threatens to thwart the proper execution of the collection of restitution ordered by a district court criminal sentence, and where the Department of Justice's purported readings of the sentence have triggered the actions of Treasury (the overseer of TOP), . . . it is hard to see why a motion in the sentencing court should not be an "applicable form of legal action." Indeed, federal courts already have the authority to issue mandamus "in aid of their ... jurisdictions," 28 U.S.C. § 1651(a), an authority that includes power "to issue such commands under [§ 1651] as may be necessary or appropriate to effectuate and prevent the frustration of orders [they have] previously issued," *United States v. New York Telephone Company*, 434 U.S. 159, 172 (1977). The power reaches even "persons who, though not parties to the original action or engaged in wrongdoing, are in a position to frustrate the implementation of a court order or the proper administration of justice" and "who have not taken any affirmative action to hinder justice." *Id.* at 174.

*Id.*

and without consideration of the economic circumstances of the defendant." 18 U.S.C. § 3664(f)(1)(A).  It further directs that "the court shall, pursuant to section 3572, specify in the restitution order the manner in which, and the schedule according to which, the restitution is to be paid."  *Id.* § 3664(f)(2).  "[T]he plain language of section 3664(f)—stating that 'the court shall' order restitution and specify the manner and schedule of payments—means that ordering restitution is a judicial function that cannot be delegated, in whole or in part."  *United States v. Corley*, 500 F.3d 210, 225 (3d Cir. 2007), *vacated and remanded on other grounds*, 556 U.S. 303 (2009); *see also United States v. Lessner*, 498 F.3d 185, 201 (3d Cir. 2007) ("The district court's obligation to comply with § 3664(f)(2) may not be delegated to the probation office.").  Thus, it is the court alone and not the government who possesses the statutory authority to order restitution and establish a payment plan for restitution.  *United States v. Martinez*, 812 F.3d 1200, 1206 (10th Cir. 2015) ("[T]he statutory scheme directs the district court, not the government, to direct how and when the defendant is to satisfy a restitution order.")*.*

When determining a schedule of payments, the MVRA directs the court to consider "the financial resources," "projected earnings," and "financial obligations" of the defendant.  18 U.S.C. § 3664(f)(2)(A)-(C).  It is plain error for a court to order full restitution without establishing on the record the manner and schedule of payments after taking into consideration the defendant's financial resources.  *Lessner*, 498 F.3d at 201; *Crim*, 451 F. App'x at 210.

"When a restitution order specifies an installment plan, unless there is language directing that the funds are also immediately due, the government cannot attempt to enforce the judgment beyond its plain terms absent a modification of the restitution order or default on the payment plan."  *United States v. Hughes*, 914 F.3d 947, 949 (5th Cir. 2019), *as revised* (Feb. 1, 2019), *as revised* (Feb. 14, 2019).  Courts that have ordered a defendant to pay restitution according to a

8

payment plan and have not ordered the entire amount of restitution to be paid immediately, have

routinely held that the government may not collect on the full amount of restitution owed when a

defendant is in full compliance with the payment plan.[10] *See, e.g., Hughes*, 914 F.3d at 949

(rejecting the government's attempt to collect the full restitution amount because it "conflicts

with the installment-based directive in [the defendant's] original judgment"); *United States v.*

*Hughes*, 813 F.3d 1007, 1010-11 (D.C. Cir. 2016) (rejecting the government's attempt to use

TOP offset to collect on the restitution judgment because the defendant had complied with the

court's restitution payment plan); *Martinez*, 812 F.3d at 1207 (rejecting the government's

attempt to collect on the restitution judgment by garnishing the retirement accounts of the

defendant because the defendant had complied with the court's restitution payment plan).  This is

because "[t]he government has statutory authority to enforce only the terms of a restitution order,

---

[10] The government cites many cases to support its contention that it has the authority to enroll Taylor's restitution obligation in TOP.  These cases, however, focus on legally distinguishable restitution orders that either (1) made the full amount of restitution due immediately, regardless of backup payment plan; (2) implemented a payment plan that only set a minimum amount that had to be paid with each installment but did not set a maximum amount, potentially implying that restitution was due immediately; or (3) explicitly permitted collection beyond the amount specified in the payment plan.  *See, e.g., United States v. Wykoff*, 839 F.3d 581, 582 (7th Cir. 2016) (affirming the district court's issuance of a writ of garnishment to collect on a restitution judgment that provided for payment in full immediately and as backup required the defendant to pay a minimum of 10% percent of his monthly income while on supervised release); *Greene v. United States*, 124 Fed. Cl. 636, 644 (Fed. Cl. 2015) (upholding IRS offset of tax overpayment to collect on criminal fine where the "the judgment imposing the fine provided that it was 'due in full immediately,' and that if it was not paid immediately, it was 'payable on a schedule'"); *United States v. Shusterman*, 331 F. App'x 994, 997 (3d Cir. 2009) (affirming the district court's issuance of a writ of garnishment to collect on a restitution judgment that provided "in the event the entire restitution is not paid before the commencement of supervision, [the defendant] shall pay monthly installments of not less than $250.00").  "Courts have almost uniformly recognized a 'crucial distinction' between cases like *Martinez*, in which the court orders the defendant to pay only through a payment schedule with no requirement of immediate payment in full, and cases like . . . *Shusterman*, in which the judgment specifies that the amount owed is due in full on the date of judgment, regardless of whether the judgment includes a back-up schedule of payments to cover any unpaid amounts."  *United States v. Williams*, 898 F.3d 1052, 1055 (10th Cir. 2018).  Given this "crucial distinction," the cases cited by the government do nothing to buttress its argument that it may undertake a collection action against Taylor for her failure to pay the full amount of restitution owed when the Court issued an installment-based restitution order that Taylor has complied with and did not require Taylor to immediately pay in full.

not to take an enforcement action that would exceed a restitution order's payment terms."[11]
*Martinez*, 812 F.3d at 1207.

In this case, the Third Circuit vacated Taylor's original restitution judgment because this
Court ordered Taylor to pay the full amount of restitution without considering Taylor's financial
resources and without stating the manner and schedule of payments. *Crim*, 451 F. App'x at 210.
Following the Third Circuit's instructions, the Court determined at resentencing that Taylor's
financial resources only enabled her to pay $100 per year and that she should begin making her
payments immediately. Despite the Third Circuit's explicit directive that this Court was
statutorily obligated to consider Taylor's financial resources when fashioning her restitution
sentence, the government now seeks to use TOP to greatly increase the amount Taylor must pay
toward her restitution without any consideration of her ability to pay. The government, however,
"[can]not usurp the district court's role by enforcing payments not yet due under the court-
ordered payment schedule." *Martinez*, 812 F.3d at 1206. Not only does the government's use of
TOP conflict with the terms of the restitution order, it also conflicts with the statutory scheme.
*See id.* at 1207.

"[U]nlike a civil judgment, the restitution order is the product of a 'specific and detailed
[statutory] scheme addressing the issuance ... of restitution orders arising out of criminal
prosecutions.'" *Id.* at 1204 (quoting *United States v. Wyss*, 744 F.3d 1214, 1217 (10th Cir.
2014)). Section 3572(d) states that "[a] person sentenced to pay a fine or other monetary
penalty, including restitution, shall make such payment immediately, unless, in the interest of
justice, the court provides for payment on a date certain or in installments." 18 U.S.C. §
3572(d)(1). This subsection provides that the full payment of restitution is not due immediately

---

[11] While "[a]n order of restitution may be enforced by the United States . . . by all . . . available and
reasonable means," 18 U.S.C. § 3664(m)(1)(A), the government may not alter the restitution order.

if a court establishes a payment plan for restitution.  *See Martinez*, 812 F.3d at 1205.  Thus, "a

defendant subject to an installment-based restitution order need only make payments at the

intervals and in the amounts specified by the order."  *Id.*  Section 3572 also explicitly defines

when a payment of restitution is delinquent or in default.  *See* 18 U.S.C. § 3572(h)-(i).  A

"payment of restitution is delinquent if a payment is more than 30 days late."  *Id.* § 3572(h).  A

"payment of restitution is in default if a payment is delinquent for more than 90 days.

Notwithstanding any installment schedule, when a fine or payment of restitution is in default, the

entire amount of the fine or restitution is due within 30 days after notification of the default."  *Id.*

§ 3572(i).  These provisions "would be unnecessary, even meaningless, if the total restitution

amount were already owed in full under an installment-based restitution order."  *Martinez*, 812

F.3d at 1205.  It is evident from the structure and language of § 3572 that under an installment-

based restitution order, the restitution debt only becomes delinquent when a defendant's

installment payment is more than 30 days late.[12]

     The Debt Collection Improvement Act provides: "Any Federal agency that is owed by a

person a past due, legally enforceable nontax debt that is over 120 days delinquent . . . shall

notify the Secretary of the Treasury of all such nontax debts for purposes of administrative offset

---

[12] The treasury regulation that governs administrative offsets pursuant to 31 U.S.C. § 3716 further
supports that an installment-based restitution debt does not become delinquent until after a defendant
misses an installment payment. The treasury regulation provides: "Delinquent or past-due refers to the
status of a debt and means a debt has not been paid by the date specified in the agency's initial written
demand for payment, or applicable agreement or instrument (including a post-delinquency payment
agreement), unless other payment arrangements satisfactory to the creditor agency have been made."  31
C.F.R. § 285.5(b).  In this case, the applicable instrument—the restitution order—requires Taylor to pay
$100 per year towards her restitution and does not require any additional payment.  Because Taylor has
timely paid her installment each year, her restitution debt is not delinquent.  *See Hughes*, 813 F.3d at
1010-11 (finding TOP inapplicable to the defendant's restitution debt because debt was not delinquent
under Treasury regulations given that the restitution order only required the defendant to "start paying
money when the Blackhawk fine is resolved, and, in any case, would only be delinquent if [the defendant]
paid less than $50 per month").

. . . .” 31 U.S.C.A. § 3716(c)(6)(A).  Thus, under TOP “Congress has subjected to offset all ‘funds payable by the United States,’ § 3701(a)(1), to an individual who owes certain *delinquent* federal debts.”[13]  *Astrue v. Ratliff*, 560 U.S. 586, 589 (2010) (emphasis added).

The government seeks to collect on Taylor’s restitution judgment because she has not paid her total amount owed in restitution—$3,300,000.00.  The government advocated at resentencing, however, that Taylor should only pay $100 per year towards her restitution based on her ability to pay.  Following the government’s recommendation, the Court issued an installment-based restitution order that only required Taylor to pay $100 per year towards restitution.  Because Taylor has timely made her restitution payments, her restitution debt is not delinquent, and the government cannot use TOP to collect on her debt.

Although the government may not use TOP to collect additional money from Taylor to apply towards her restitution obligation, it is not without recourse.  A district court retains jurisdiction to adjust the method and manner of payment of a restitution order.  18 U.S.C. § 3664(k), (o).  When a court receives notification of “any material change in the defendant’s economic circumstances that might affect the defendant’s ability to pay restitution . . . , the court may, on its own motion, or the motion of any party . . . adjust the payment schedule, or require payment in full, as the interests of justice require.”  *Id.* § 3664(k).

Cognizant of the Court’s ability to adjust Taylor’s payment schedule, the government acknowledged at sentencing that if it wished to increase Taylor’s payment amount it could always “take it back up with your honor.”  Hr’g 11/15/12.  The Court

---

[13] The government relies on a Department of Justice (“DOJ”) regulation to argue that Taylor’s restitution debt is subject to collection under TOP because it is past due.  The DOJ regulation provides: “Judgment debts remain past due until paid in full.”  28 C.F.R. § 11.11(b).  While it is true that “a sentence that imposes an order of restitution is a final judgment,” 18 U.S.C. § 3664(o), the DOJ regulations is immaterial because Treasury cannot collect on any debt under TOP that is not delinquent.

confirmed that if the government "wishes to have that amount increased [it] will have to file an appropriate petition and [it] will also have to file appropriate evidence . . . that an adjustment would be required." Hr'g 11/15/12. In October 2017, the government received financial information from Taylor that it believed established that Taylor had the ability to pay more towards her restitution. Accordingly, the government presented Taylor with a written payment agreement for her to sign that would modify her restitution payment from $100 per year to $25 per month.[14] In February 2018, Taylor informed the government that she did not oppose the proposed modification of her restitution order, but she requested that the government submit a modification order to the Court for approval. The government never submitted the proposed modification of Taylor's payment schedule to the Court for approval and Taylor's restitution installment plan remained $100 per year.

Although the government was aware of its ability to request modification of Taylor's restitution order payment plan, and even had the consent of Taylor to do so in 2018, the government chose not to move under § 3664(k) to seek such a modification from the Court. Instead, the government removed the Court from the decision by enrolling Taylor's restitution debt in TOP and deducting fifteen percent of Taylor's monthly social security benefits to apply it to her restitution. In effect, the government impermissibly increased Taylor's restitution payment plan without authorization from the Court in violation of the restitution order.

---

[14] The Installment Payment Plan that the government sought to enter with Taylor not only increased Taylor's payment plan, it also required Taylor to "agree[] that, in addition to the payments due under this agreement, the United States Attorney shall refer the debt to the U.S. Department of Treasury for inclusion in the Treasury Offset Program." Def.'s Reply Ex. B.

Though the government may believe that it is in the best position to determine whether Taylor should pay more towards her restitution, Congress vested this authority in the courts.  In doing so, it mandated that a court must consider the defendant's economic circumstances in fashioning and modifying the manner and method of payment for a restitution order.

It makes sense that a court should consider a defendant's ability to pay.  As the Senate Committee on the Judiciary recognized in considering the MVRA, "a significant number of defendants required to pay restitution under this act will be indigent at the time of sentencing . . . , making it unlikely that they will be able to make significant payments on a restitution payment schedule."  S. Rep. No. 104-179, at 21 (1995).

The "vast majority of criminal defendants are poor. . . .  And approximately eighty percent of criminal defendants are sufficiently indigent to qualify for court-appointed counsel."  Abby Shafroth et al., Nat'l Consumer L. Ctr., *Confronting Criminal Justice Debt: A Guide For Litigation* 5 (2016).  Moreover, "people who have been incarcerated are significantly burdened by multiple types of debt."  Annie Harper et al., *Debt, Incarceration, and Re-entry: a Scoping Review*, 46 Am. J. Crim. Just. 250, 268 (2021).  A large portion of this debt stems from legal financial obligations incurred as a direct result of involvement in the criminal justice system, including restitution, criminal fines, court fees, incarceration charges, and fees for post-release supervision.  *Id.* at 251.  "For many, criminal justice debt can . . . trigger a cascade of debilitating consequences . . . ."  Karin D. Martin et al., Nat'l Inst. of Just., U.S. Dep't of Just., *Shackled to Debt: Criminal Justice Financial Obligations and the Barriers to Re-Entry They Create*, New Thinking in Community Corrections, Jan. 2017, at 9.  As formerly incarcerated

individuals struggle to pay their legal financial obligations, they "experience economic hardship and financial strain, face challenges in finding employment and housing after release, are burdened by on-going, long-term indebtedness, and their family networks are also burdened, which causes tension in relationships."  Harper, *supra*, at 268. Importantly, a major consequence of these financial burdens is their tendency to increase a person's risk of recidivism, particularly when the individual is unable to pay.  Douglas N. Evans, *The Debt Penalty—Exposing the Financial Barriers to Offender Reintegration*, Rsch. & Evaluation Ctr., John Jay College of Crim. Just., Aug. 2014, at 9; *see also* Martin, *supra*, at 9 ("For some formerly incarcerated individuals, these [legal financial obligations] . . . motivate[e] further criminal involvement.").

Here, Taylor asserts that she became unemployed on March 21, 2020 because of COVID-19 and that her only source of income is her Social Security benefits.  Def.'s Letter Mot. 3.  A fifteen percent reduction in her Social Security benefits has caused Taylor "financial and emotional distress as [she] is not able to meet [her] financial obligations."  *Id.*  As Taylor aptly argues, "I have very poor credit and shouldn't have to go into debt to pay a debt, especially when I am not in arrears, had not defaulted, and consistently paid the amount ordered by this Court to be paid."  *Id.*  The Court agrees with Taylor's assessment and will grant her motion for relief.[15]

## IV. CONCLUSION

I will grant Taylor's motion for relief and declare the collection of restitution pursuant to the offset of Taylor's Social Security benefits through TOP to be in contravention of the Court's

---

[15] The Court makes no factual findings as to Taylor's ability to pay her restitution. The $100 yearly installment-based restitution order remains in force.  Of course, the government is always free to seek a modification of Taylor's restitution payment plan pursuant to 18 U.S.C. § 3664(k).

restitution judgment.  I will also order the government to return to Taylor all funds taken by the government by offset of Taylor's Social Security benefits.[16]

 

 

 

 

                                        \_s/ANITA B. BRODY, J._____

                                        ANITA B. BRODY, J.

Copies **VIA ECF**

---

[16] Additionally, I will order the government to provide Taylor with an accounting of restitution currently owed.